**In re MARDEN et al.**

Patent Appeal No. 2632.

Court of Customs and Patent Appeals.

March 25, 1931.

See, also, 47 F.(2d) 957.

Max F. Reges, of Bloomfield, N. J. (Raymond Jones, of Washington, D. C., of counsel), for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

From a decision of the Board of Appeals of the United States Patent Office, affirming the decision of the Examiner, refusing to allow claims 9 to 12, inclusive, and 14 to 19, inclusive, on the ground that the claims defined nothing inventive over the prior art, the applicants have appealed here. Claims 9 to 12 are for a method of producing ductile vanadium, and claim 9 is regarded as illustrative of the method claims. Claims 14, 15, 16, 17, 18, and 19 are article claims and these with claim 9 are as follows:

"9. The method of preparing ductile vanadium which comprises reducing an oxide of vanadium to form vanadium powder, slowly heat-treating the vanadium in a high vacuum until substantially all the adsorbed and absorbed gases are removed, and then fusing said powder to remove any hydrogen remaining.

"14. A coherent homogeneous ductile body of vanadium.

"15. A pure ductile homogeneous body of vanadium.

"16. A wire formed of ductile vanadium.

"17. A filamentary conductor of ductile vanadium.

"18. An electrode formed of ductile vanadium.

"19. A form of vanadium which is ductile and homogeneous."

The process claims relate to a process for preparing vanadium so that it will be ductile. The metal in its ductile state may be made into filaments for use in various electrical arts. The process consists of taking oxide of vanadium and reducing the same to a form of vanadium powder. This is slowly heat treated in a high vacuum until substantially all the adsorbed and absorbed gases are removed. The powder is then fused to remove

any hydrogen remaining. A filament may then be formed by cold working the fused body of vanadium.

It is contended by appellants that they were the first to produce ductile vanadium and that they are not only entitled to all of their process claims but that they are entitled to a patent on the article, ductile vanadium, in its various forms.

It is conceded by counsel on both sides that ductile or malleable vanadium is nothing more or less than vanadium freed from all of its impurities and that all pure vanadium is ductile.

The Board of Appeals allowed certain method claims relating to the method of producing the substantially pure metal powder and rejected the method claims at issue relating to the vacuum heat-treating process, on the references Kuzel et al., 1,088,909, March 3, 1914, and Liebmann, 1,111,698, September 22, 1914, and also referred to the patent to Von Bolton, 799,441, September 12, 1905. In the decision of the Board of Appeals the following language is used:

"We find nothing patentable in the rejected claims over these references. Attention is also called to the decision of the Circuit Court of Appeals, 3rd Circuit in General Electric Co. v. De Forest Radio Co. et al., 28 F.(2d) page 641, in which claims exactly parallel to the article claims 14 to 19, inclusive, of the present case were held invalid on grounds which are equally applicable to these claims. Claims 14–19, inclusive, are further held unpatentable in view of this decision. The brief contends that the decision is not in point because the Just and Hanaman patent No. 1,018,502 disclosed as prior art a coherent, homogeneous, substantially pure tungsten filament whereas in the present case the prior art does not disclose vanadium having these characteristics. We do not understand that the decision was based upon the disclosure of Just and Hanaman and furthermore it is believed that the art discloses substantially the same process as that of the application as adapted to a group of metals which are equivalent to vanadium and if applied to vanadium the process of appellant, at least as defined in the claims, would result in the same product."

■ We agree with the decision of the Board of Appeals that the appealed method claims call for no patentable invention not disclosed in the prior cited art, and we furthermore agree with the decision of the Board rejecting the article claims. If appellants have invented a new and useful process for producing pure vanadium, they are entitled to their patent monopoly of that process. But pure vanadium is not new in the inventive sense, and, it being a product of nature, no one is entitled to a monopoly of the same.

Pure vanadium has been known to the metal art for many years. Whether it was produced in commercial quantities or whether commercial use was made of it is immaterial, so long as it was known to the art. A discussion of pure vanadium, the methods of its production, and its uses is found in Thrope's Dictionary of Applied Chemistry, volume V, p. 610 (1913).

Vanadium in composition with other metals has been known to exist by metallurgists for more than a century, having been discovered by Del Rio in 1801 in vanadinite. Webster's New International Dictionary (1925).

■ The quality of purity of vanadium or its ductility is a quality of a natural product and as such is not patentable. General Electric Co. v. De Forest Radio Co. et al. (C. C. A.) 28 F.(2d) 641, 643; In re Marden (No. 2631) 47 F.(2d) 957, 18 C. C. P. A. ——.

In the above cited case two of the claims involved were: "24. A wire formed of ductile tungsten" and "26. Substantially pure tungsten having ductility and high tensile strength." Substantially the same question was there presented as is presented here, and the court held that pure tungsten was an element of nature and hence was not patentable because the patentee, Coolidge, did not invent it, and furthermore held that the drawing of the tungsten into wire for filament purposes was obvious and, therefore, not patentable. In the opinion the following language was used:

"There are thus many elements of invention in what Coolidge did but we should be careful to distinguish between the several things he did and accord invention only to the proper thing and the thing through which the art made its advance, and that, we think, was the method he disclosed for producing substantially pure tungsten, not the drawing of pure tungsten, once obtained, into a wire. * * * Given pure tungsten with its natural characteristics of great ductility and high tensile strength, the drawing of such tungsten into a wire for filament purposes was obvious."

While the counsel of appellants argues that the prior art is silent on ductile vanadium, he admits, in his brief, that "all metals are ductile to a greater or to a lesser degree," and that the purification of the vanadium

brings about its ductility. The ductility or malleability of vanadium is, therefore, one of its inherent characteristics and not a characteristic given to it by virtue of a new combination with other materials or which characteristic is brought about by some chemical reaction or agency which changes its inherent characteristics.

The decision of the Board of Appeals is affirmed.

Affirmed.