22 C. C. P. A. (Patents)

### In re RIDGWAY et al.
### Patent Appeal No. 3430.

Court of Customs and Patent Appeals.
· April 29, 1935.

George Crompton, Jr., of New York City, and R. L. Scheffler, of Washington, D. C., for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Appellants have here appealed from the decision of the Board of Appeals of the United States Patent Office, affirming that of the examiner refusing to allow appellants claims 8 to 22, inclusive. In this court appellants moved to dismiss the appeal as to claims 14, 15, 19, and 20. Of the remaining claims, 9 and 21 are regarded as illustrative and follow:

"9. A manufactured abrasive material containing more than 99% of crystalline alpha alumina, from 0.2% to 2% of included voids uniformly distributed therethrough, and not less than .05% of a nonaluminous impurity of the group consisting of iron oxid and titanium oxid, the alpha alumina crystals being free of fracture and parting planes."

"21. In a process of producing a crystalline aluminous abrasive involving the operations of fusing subdivided aluminous material in an electric furnace and allowing the fused material to crystallize, the improvements which consist in subjecting to such operations a composition containing at least 99% $Al_2O_3$ from 0.05% to 0.5% of titanium oxide and iron oxide and not more than a trace of silica and CaO, the fusion being conducted with high superheat and slow feed whereby to maintain only a very thin cover of unfused feed on the fusion mass and non-reducing conditions."

The references relied upon are:
Saunders, 960,712, June 7, 1910.
Verneuil, 1,004,505, September 26, 1911.
Tone, 1,192,709, July 25, 1916.
Allen, 1,199,041, September 26, 1916.
Saunders et al., 1,263,709, April 23, 1918.
Tone, 1,276,134, August 20, 1918.

The alleged invention relates to an abrasive material used for the most part for making grinding wheels and other abrasive implements, the chief constituent of which material is alpha alumina. The abrasive material is produced in very large ingots and then crushed into grain form. The alpha alumina is the hard, cutting constituent of the abrasive implement. This material, when mixed with a proper binder, such as a vitrifiable bond, is formed into

---

[1] Not for publication.

the shape desired, placed in a kiln, and baked at high temperatures. When so treated, it becomes a finished abrasive article.

The examiner rejected the claims upon two grounds. The first ground was that appellants are not entitled to a patent on a product of nature, even though they attempted to distinguish their product by slightly different quantities of impurities or in different sized or shaped voids contained therein when compared with other similar products. The second ground of rejection was that the claims are not patentable over the prior art cited.

The Board of Appeals approved both grounds of rejection of the examiner and in addition stated that the applicants had failed specifically to describe the procedure by which a product having all the characteristics described in the claims may be produced with any degree of certainty. Appellants in this court suggest that the Board of Appeals later, on rehearing, withdrew this so-called ground of rejection and that under the case of In re Tucker and Reeves, 19 C. C. P. A. (Patents) 810, 54 F.(2d) 815, this court cannot consider that ground. We find no withdrawal of such rejection on the part of the board and, in view of our conclusions as to the other grounds of rejection, it is not regarded as necessary for us to discuss this ground further than to say that we agree with the following statement of the board concerning applicants' disclosure: "Furthermore, the applicants have failed to describe specifically the procedure by which a product having all of the characteristics described in the claims may be produced with any degree of certainty. Only about two pages are devoted to the applicants' method and these conclude with the statement that 'the product is substantially all alpha alumina.' The description is deficient in failing to give the proportions of the ingredients in the reduction charge, the temperatures employed, etc., nor is it clear just how fast the material is fed to the furnace when it is fed 'slowly.' The applicants should not claim a product having specific characteristics without disclosing the method by which such a product may be produced without experimentation."

This is a proper place, we think, to pass upon the "single," so called, method claim (21) quoted above. The first part of the claim, down to the point where it names the ingredients of the composition, is introductory in character and sets out that a crystalline aluminous abrasive is produced by fusing in an electric furnace and allowing the fused material to crystallize. It is obvious that this matter is not new. The next feature of the claim states the ingredients of the composition treated in the electric furnace. This part of the claim is found in one of the article claims and in slightly different form in other article claims and will be hereinafter discussed. The last phrase of the claim, which is as follows, "the fusion being conducted with high superheat and slow feed whereby to maintain only a very thin cover of unfused feed on the fusion mass and non-reducing conditions," would seem to be the feature of the claim which appellants regard as lending patentability thereto.

We agree with the conclusion of the board that the teaching that the fusion should be conducted "with high superheat and slow feed" is too indefinite to distinguish from the prior art.

Most of appellants' argument in this court is directed to the proposition that the Patent Office tribunals have not been able to understand appellants' real invention, and that the Patent Office tribunals concluded that appellants sought to get a patent on pure alpha alumina. Appellants urge strongly here that they did not seek to get a patent on pure alpha alumina because the claims and specification definitely call for alpha alumina which is not pure.

As we understand the views of the Patent Office tribunals, the first ground of rejection is not necessarily based upon the fact that the applicants sought to get a patent on pure alpha alumina, but that they sought to get a patent on a nearly pure alpha alumina, and the tribunals were of the opinion that a natural product with slight impurities would not be patentable as such over the same natural product slightly less pure. In other words, while appellants might be entitled to a patent on a method of purifying alpha alumina, they would not be entitled to a patent on the article alpha alumina, a natural product, merely because of the degree of purity of the article.

We agree with this view and the authorities abundantly support it. See In re Marden et al., 47 F.(2d) 958, 18 C. C. P. A. (Patents) 1057; In re Marden, 47 F.(2d) 957, 18 C. C. P. A. (Patents) 1046; and General Electric Co. v. De Forest Radio Co. (C. C. A.) 28 F.(2d) 641.

Appellants point out that some of the claims call for voids (empty spaces) in certain percentages and in certain forms; that other claims call for the abrasive to be of a certain color with iron oxids in certain proportions uniformly distributed; that one of the claims calls for an abrasive metal of the kind described but in grain form, each grain consisting of a single crystal or crystal fragment; and that other similar limitations are placed in some of the claims.

The board was of the opinion, and we concur in this view, that appellants, by these limitations, have attempted to obtain a patent by reciting the physical characteristics which are inherent in the disclosures of the cited references. It was the view of the board that the patents treat the same materials by methods equivalent to those of appellants and that there is no reason apparent why they should not have the characteristics defined in these specially limited claims.

It is not necessary for us to discuss all the references. While the board refers generally to the references, it specifically names only Tone, Saunders, and Verneuil.

The patent to Saunders, 960,712, relates to a process of purifying aluminous materials and stresses the desirability of producing commercially pure alumina. Saunders et al., No. 1,263,709 discloses a content of alumina of 98.80 per cent. and the patent to Tone, No. 1,276,134 discloses an alumina content of 98.81 per cent. Said Tone patent discloses the same impurities that appellants are claiming: Iron oxid, titanium oxid, and silica and calcium oxid. Verneuil, 1,004,505, discloses an artificial saphire and a method of making the same, which saphire contains specks or cavity-like spots with "curved or bubble like walls," and compares these specks or spots with those found in natural stones.

Appellants claim in claim 9 more than 99 per cent. of alpha alumina, which alpha alumina content is only .20 of 1 per cent. above Saunders' claimed alumina.

Appellants here stress the importance of the impurities. We have examined the specification carefully and think that appellants' teachings are to the effect that the benefits to be derived from their abrasive are chiefly due to the high degree of purity of their product. We quote the following from the specification: "A high degree of chemical purity (substantial freedom from all materials other than crystalline alpha-alumina) is an essential characteristic of our novel product, but is not its sole essential characteristic, since such chemical purity may exist in absence of the desired physical qualities. On the other hand the desired physical qualities cannot, so far as we are aware, exist in the absence of such high chemical purity. * * *"

In the affidavit of Dr. Klein it is stated: "(a) There must be a relatively high content of crystalline alpha $Al_2O_3$ which is of course the hard constituent. It is perfectly obvious that the hardness will be lowered by a substantial reduction in the amount of this constituent and that the strength properties mentioned under (b) may likewise be impaired."

Concerning this feature of the case, the board said: "It is observed, however, that the claims on appeal define the product as consisting 'of at least 99% of alpha alumina' and in their brief it is stated that the chemical purity of the product with respect to alpha alumina is of the order of 99.5%. This is pretty close to pure alpha alumina; and the applicants appear to attribute the valuable properties of their product to the high degree of purity of alpha alumina. It is true that some of the claims include 'non-aluminous impurities comprising titanium oxid,' the 'presence of iron,' etc., but it is not clear from the disclosures in the case that these impurities are desirable or that they add to the effectiveness of the applicants' product as an abrasive. The applicants admit that all that they 'positively can say is that they have produced an abrasive of relatively high strength and stability which is of high but not absolute purity.' Certainly the applicants are not entitled to a patent for their failure to reduce alpha alumina to its pure state."

Appellants' motion to dismiss the appeal as to claims 14, 15, 19, and 20 is granted, and the appeal as to these claims is dismissed. We find no error in the decision of the Board of Appeals, and the same is affirmed.

Affirmed.