25 C.C.P.A.(Patents)

## In re NELSON.
### Patent Appeal No. 3969.

Court of Customs and Patent Appeals.
June 27, 1938.

Percy S. Webster, of Stockton, Cal., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner denying patentability, in view of prior art cited, of seven claims, numbered 19 to 25, inclusive, of appellant's application for patent entitled "For Food Product and Method of Preparing Same." The specification recites that the claimed invention relates particularly to the preparation and preserving of onion juice, and each of the claims names this product.

Claims 19, 20 and 21 are for the product; the others are for the method of preparation and preservation. As illustrative, we quote claims 19 and 22:

"19. A food product which comprises the natural extracted juice of an onion the free acids of which have been neutralized, whereby the product has a pH value of 6.8 to 7."

"22. That method of preparing a food product which comprises extracting the natural juice from onions, forthwith neutralizing the free acids in the juice to impart to the juice a pH value of 6.8 to 7, and adding a preservative."

Claim 23 specifies "adding a base to the juice in an amount to impart to the juice a pH value of 6.8 to 7." Claim 24 names calcium hydroxide for such base; claim 25 names sodium chloride. Each of the claims, except No. 19, specifies use of a preservative, the nature of which is not described.

The references upon which the claims stand finally rejected are the following patents:

Blogg (Br.), 1,312, March 16, 1905.

Barron (Br.), 14,835, November 20, 1916.

Ellis, 1,002,506, September 5, 1911.

Specifically, the rejection was based upon the patent to Ellis in view of the patents to Barron and Blogg. The examiner's description of the disclosures of the references and of appellant's method of preparation and preservation, given in connection with his reasons of rejection, is as follows:

"* * * The product of the Ellis patent is a solid seasoning material composed of dried onion juice, salt, calcium carbonate, and starch. Ellis expresses the juice from onions and combines the clear juice with salt. This mixture is then dried and to it is added the other two components of the product, namely, calcium carbonate and starch. On page 1, lines 78 to 80, it is stated that 'Carbonate of lime, in particular, tends to preserve the neutrality of the composition.' On page 2, lines 23 to 24, there is the statement, 'Carbonate of lime may serve as antacid material.' The calcium hydroxide specified by applicant in claim 24 is deemed to be but a chemical equivalent for the calcium carbonate disclosed by Ellis, since both are alkaline materials. It is held that the calcium carbonate in the Ellis composition is soluble enough and alkaline enough, and that the product and the atmosphere contain enough moisture to permit a correction in the pH value from 5 or 5.4 to 6.8 or 7, such a correction requiring a comparatively small amount of alkaline material. Applicant's product is alleged to be unoxidized and fully preserved; Ellis' product contains 'onion material solely in a substantially unoxidized or undecomposed state' (page 2, lines 27 to 29).

"Barron et al. teach the preparation of an onion essence with rectified spirits of wine. The product is definitely a liquid onion extract. The use of salt in an onion flavoring composition is also mentioned (page 2, line 1).

"Blogg shows the use of alcohol to preserve essential oils, the alcohol serving to protect the oil from oxidation.

"Applicant's product is thus prepared by expressing the juice of onions, adding salt and a basic substance, as taught by Ellis, and then adding a preservative, as taught by each of Barron et al. and Blogg. The seasoning composition may be liquid, as shown by Barron et al. and Blogg; calcium hydroxide 'may serve as antacid material' instead of calcium carbonate, since it is an obvious equivalent alkaline substance. Applicant's product is unoxidized; so, too, is Ellis' (see claims 1 to 4). Variations in the proportions of salt and alcohol may be practiced; the pH of the product may be specified. However, patentability may not be predicated upon specific limitations in the proportions of a composition when no different product is obtained. In re Lilienfeld, 67 F.2d 920, 21 C.C.P.A., Patents, 792, and decisions cited therein. Nor may patentabil-

ity be predicated upon specific characteristics ascribed to an old product or process."

The brief on behalf of appellant, inter alia, states:

"* * * Applicant, of course, does not claim any novelty in the addition of a preservative per se to any substance so no detailed consideration of these references is necessary.

"This therefore narrows the consideration of this case down to the one proposition as to whether or not the Ellis patent No. 1002506 teaches applicant's method or discloses applicant's final product."

At the hearing before us, appellant did not present oral argument, but submitted on brief.

In the brief a comparison was made between appellant's application and the Ellis patent, in parallel columns, as follows:

### Method.

| The Applicant. | Ellis |
|---|---|
| *Onion Bulbs.* | *Onion Bulbs.* |
| a. Express juice | a. Express juice |
| b. Filter juice from pulp. | b. Separate juice from pulp. |
| c. Add a *small amount* of salt (optionally omitted) to onion juice. | c. Add a relatively small percentage of onion juice to *an excess quantity* of salt to make a paste. |
| d. Correct pH value of the clear juice from 5 to 5.4 to 6.8 to 7. | d. Vacuum distill salt-juice paste to a dry state to permit grinding. |
| e. Add alcohol or other preservative. | e. Grind the dry paste. |
| | f. Add starch *or* carbonate of lime ($CaCO_3$) to keep the ground salt dry and free flowing. |

### Product

| Applicant. | Ellis. |
|---|---|
| A clear onion juice retained in liquid form, having the important property of being free of acid reactions and thereby capable of retaining its natural color and flavor for an indefinite period. | A dry salt of light green color having an onion flavor in which the salt is the predominating ingredient and which salt contains dry starch *or* dry carbonate of lime, as a *non-hydroscopic* agent to keep the salt free flowing. |

It is noted that the comparison quoted is not confined to the exact phraseology of either the claims of the application, or of the Ellis patent. It seems to be appellant's interpretation of the meaning of the terms respectively used.

Subsequent to the hearing, the court requested counsel for appellant to elucidate certain questions not fully understood from the first brief, and counsel responded with a statement, the pertinent portions of which we quote:

"The expression pH value as used by applicant in the claims on appeal may be interpreted in practical language as a symbol of a system or scale used for expressing the measurement of acidity or alkalinity of the onion juice constituting the final new product of applicant.

"Technical definitions of pH are to be found in Webster's New International Dictionary, Second Edition, Unabridged; and in General Chemistry, by Leon B. Richardson, Revised Edition, page 240.

"The relation of the use of the expression in the claims on appeal to the contentions of applicant is as follows:

"Richardson, supra, states that a *neutral* solution is one in which the pH value is 7; an *acid* solution is one having pH value *less* than that number.

"Natural onion juice when first extracted is extremely acid; i. e., according to applicant's disclosure has a pH value of 5 to 5.4. * * * The acids in the natural onion juice are what cause quick oxidation and deterioration of the same both in color and flavor, and this cannot be arrested, even if a preservative is added to the natural juice.

"Applicant's invention * * * is comprised in the fact that he conceived of immediately substantially neutralizing the onion juice solution by adding calcium hydroxide thereto. This neutralization produced therefore a product having a pH value of from 6.8 to 7, or substantially acid free. The applicant then determined that when a preservative was added to this neutral solution (one having a pH value of 6.8 to 7) that thereafter deterioration of flavor or color would not occur.

"The original juice being an acid *solution,* and the invention consisting primarily in converting such *acid* juice into a substantially neutral juice and then fixing it to remain in its latter condition, the applicant uses the chemical expression pH value of 6.8 to 7 to indicate that the new solution is neutral instead of acid as it was when first extracted from the onions."

One point suggested by appellant is that his product is in liquid form, while that of Ellis is in the form of a dry salt. As to this, the brief of the Solicitor for the Patent Office says:

"\* \* \* The appealed claims themselves do not appear to be expressly limited to a product which is in liquid form. They seem merely to relate to onion juice and the patent to Ellis clearly points out that his product is such as "to hold the onion juice imprisoned \* \* \*."

We are of the opinion that a fair interpretation of the claims is that appellant's product is in liquid form, but it does not follow that this of itself would render them patentable. The Solicitor for the Patent Office suggests that "there is no particular patentable difference between a composition which is in dry form and one which is the same composition with the addition of water," citing the cases of In re Matthew Green and Elmer M. Jones, 48 F.2d 933, 18 C.C.P.A., Patents, 1247, and In re Bates, 88 F.2d 486, 24 C.C.P.A., Patents 998. Those cases are the reverse of this in that the respective parties were claiming compositions in dried form, whereas the references showed compositions in liquid form. The principle there followed, however, is deemed to be applicable in this case. So, the mere matter of liquid form, if the respective compositions are substantially the same, cannot be regarded as lending patentability to appellant's claims.

It will be noted from that part of·the statement of the examiner quoted, supra, that he expressly held that the calcium carbonate used by Ellis "is soluble enough and alkaline enough, and that the product and the atmosphere contain enough moisture to permit a correction in the pH value from 5 or 5.4 [the value which appellant's disclosure teaches is in natural onion juice when first extracted] to 6.8 or 7, such a correction requiring a comparatively small amount of alkaline material." Also, the examiner held that it did not constitute invention to substitute calcium hydroxide [named specifically only in appellant's claim 24] for the calcium carbonate used by Ellis. These holdings the board approved, and we are not convinced by anything appearing in the record, nor by appellant's argument, both of which have been carefully studied, that such holdings are erroneous.

The claims contain no limitation defining any particular amount of whatever neutralizing agent may be used, so no step critical as to amount is defined over the prior art.

The decision of the Board of Appeals is affirmed.

Affirmed.