In re CROSLEY et al.

Patent Appeal No. 5237.

Court of Customs and Patent Appeals.

Feb. 11, 1947.

Davis, Lindsey, Smith and Shonts, of Chicago, Ill. (Glen E. Smith, of Chicago, Ill., of counsel), for appellants.

W. W. Cochran, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claim 4 in appellants' application for a patent for an alleged invention relating to sodium tetrathionate in a purified form and containing not more than one molecule of water of crystallization.

Process claims 1, 2, and 3, for preparing stabilized and purified sodium tetrathionate were allowed by the Primary Examiner.

Claim 4 which clearly defines the composition of matter reads: "4. As a new composition of matter, purified sodium tetrathionate containing not more than one molecule of water of crystallization."

The reference relied upon is: Gmelin-Kraut, "Handbuch der Anorganischen Chemie", Band II abteilung I, page 341 (1906).

It is stated in appellants' application that sodium tetrathionate has therapeutic value and "is ordinarily administered intravenously as an aqueous solution of the salt."

It is further stated in appellants' application that unless the sodium tetrathionate is purified and contains not more than one molecule of water of crystallization, it is not stable for long periods of time.

It is conceded in the brief of counsel for appellants that although sodium tetrathionate containing more than one molecule of water and certain impurities has therapeutic value for certain diseases relating to "the circulation of blood to the extremities of human patients," it was necessary in its unpurified form to prepare it "just prior to administration," whereas in its' purified form, as defined by the appealed claim, it may be sealed in sterile ampules for a long period of time.

The appealed claim was rejected by the Patent Office tribunals on the ground that the reference disclosed the composition defined therein.

Subsequent to the examiner's final rejection, and prior to his statement to the board, one of the appellants, Albert L. Raymond, introduced into the record an affidavit in which he stated that, in his opinion, the cited reference erroneously referred to the product therein described as an anhydrous sodium tetrathionate, and, in support of his views, referred to the statement therein that the compound "Melts upon gentle heating in its water of crystallization * * *", "whereas an anhydrous material obviously would not have water of crystallization;" that in the 8th edition of the same work which was published in 1928, no reference was made to an anhy-

drous sodium tetrathionate, although reference is made therein to a process which, it was stated in the reference, produces anhydrous sodium tetrathionate, but which actually produced sodium dihydrate, an impure preparation; and that each of the processes referred to in the reference produced the dihydrate tetrathionate, an impure preparation, instead of the anhydrous sodium tetrathionate, called for by the appealed claim.

Based upon the affiant's opinion, as stated in the affidavit, it was argued before the tribunals of the Patent Office by counsel for appellants, and it is argued here, that the reference does not disclose a purified sodium tetrathionate containing not more than one molecule of water of crystallization; and that, therefore, appellants are entitled to a patent for the appealed claim.

In his statement to the board, the Primary Examiner stated that as the reference disclosed the product defined by the appealed claim, the claim was clearly anticipated. The examiner also stated that the claim was properly rejected upon the ground that the mere drying of chemical compounds is common practice in the chemical arts and that there is no invention in the "mere concept" of dehydrating a chemical compound.

In affirming the decision of the Primary Examiner, the board disagreed with the views expressed in the affidavit of the affiant Raymond and stated that the reference not only disclosed the composition defined by the appealed claim but also disclosed a process which produced that composition. The board agreed with the views expressed by the Primary Examiner that "the broad conception of preparing any inorganic salt in anhydrous condition is not of inventive merit" and in support thereof, cited and quoted from the textbook "Inorganic Chemistry", Hinds, Scientific Press, New York, 1905, wherein it appears that it is common practice in chemistry to dehydrate chemical substances.

The board also stated in its decision that in view of the record, the production of sodium tetrathionate in a purified form was a mere matter of degree and did not involve invention.

It cannot be seriously questioned that an anhydrous sodium tetrathionate is disclosed in the reference relied upon by the tribunals of the Patent Office. Although the affiant Raymond testified that in his opinion the processes set forth in the reference would not produce such a composition, there is nothing in the affidavit to indicate that he attempted to produce the composition by any of those processes, nor are we able to hold that the disclosure of the composition is merely accidental, as argued by counsel for appellants.

■ Furthermore, this court is committed to the doctrine that where a product is clearly disclosed in a publication, the operativeness of any of the processes by which it is claimed the product could be produced is immaterial, and that the disclosure of the composition is sufficient to anticipate a claim therefor. In re Marden, 48 F.2d 428, 18 C.C.P.A., Patents 1119 and cases therein cited; In re Von Bramer et al., 127 F.2d 149, 29 C.C.P.A., Patents, 1018, 1024.

It is further argued by counsel for appellants that the composition defined by the appealed claim is patentable over the prior art cited because it is in such a purified condition that it is stable and may be stored for long periods of time and administered medicinally without any "loss of its character or effectiveness."

The difficulty with the argument by counsel for appellants is that it is conceded in their brief that unpurified and unstable sodium tetrathionate has therapeutic value, although it is necessary that such a composition be freshly made immediately prior to its administration. It is true, as argued by counsel for appellants, that the composition defined by the appealed claim is stable and, therefore, is more useful professionally and commercially than an unstable sodium tetrathionate. In view of the fact, however, that even in an unstable condition sodium tetrathionate has therapeutic value and can be used, both professionally and commercially, it is clearly evident that the purification of the composition is but a matter of degree and, therefore, the purified composition does not involve patentable subject matter. Counsel for appellants

rely upon the decision in the case of Farbenfabriken of Elberfeld Co. v. Kuehmsted, C.C., 171 F. 887. In that case the patent of one Hoffman was involved. It called for a new article of manufacture which was "acetyl salicylic acid" having a formula which is unnecessary here to reproduce. The composition is popularly known as aspirin, a medicinal preparation having well known therapeutic properties.

Prior to the Hoffman patent, acetyl salicylic acid was a well known chemical product. It appears, however, from the record in that case, that the prior art substance was not in a pure state and was not useful as a medicinal preparation; that the patentee Hoffman discovered a method of eliminating certain impurities which made his product useful as a medicinal preparation. In other words, the patentee's product was different in kind from the theretofore known acetyl salicylic acid and the patent was, therefore, held valid.

In the instant case, however, sodium tetrathionate disclosed in the reference, although in an unstable condition, was useful as a therapeutic agent.

It is evident, therefore, that the most that appellant has done is to convert an unstable sodium tetrathionate into a stable condition which makes it more useful as a therapeutic agent. Accordingly, he has not produced a composition which is different in kind, but one which is different only in degree. Such a composition does not, therefore, involve patentable subject matter.

As stated in the case of In re Merz, 97 F.2d 599, 25 C.C.P.A., Patents, 1314, 1317, referring to the case of Farbenfabriken of Elberfeld Co. v. Kuehmsted, supra, "Hoffman, the inventor, discovered a new method of purifying this acid [acetyl salicylic acid] and when purified it became a very valuable (and in a patent sense a new) material used extensively for medicinal purposes for which it was in no sense suitable prior to its purification." [97 F.2d 601] See also In re Marden, 47 F.2d 958, 18 C.C.P.A., Patents 1057.

In view of the fact that appellants' composition does not differ in kind from that disclosed in the reference but only differs in degree therefrom, we are of opinion that the tribunals of the Patent Office reached the right conclusion.

Accordingly, the decision of the Board of Appeals is affirmed.

Affirmed.