84 C.C.P.A. (Patents)

## In re MICHALEK.
### Patent Appeals No. 5270

Court of Customs and Patent Appeals.
March 25, 1947.
Rehearing Denied May 16, 1947.

Pennie, Edmonds, Morton & Barrows, of New York City (Louis D. Forward, of New York City, and Clarence M. Fisher, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the examiner of the single claim of appellant's application for patent, reading: "1. As a product, the nuclear-substituted dichlorastyrenes having a density of from $D_4{}^{25} = 1.236$ to $D_4{}^{25} = 1.280$ and an index of refraction of from $N_d{}^{25} = 1.5724$ to $N_d{}^{25} = 1.5838$."

The examiner cited four references but the board expressly overruled two of them.

Those approved by the board as proper references are: Dreisbach, 2,110,829, Mar. 8, 1938; Dreisbach and Day, 2,295,077, Sept. 8, 1942.

Appellant's claim was held to be anticipated by the art so cited by the board, in whose decision it was said, inter alia: "The appealed claim is directed to a group of six isomeric forms of a type of chemical compound. The compound styrene is modified by combining two chlorine atoms with the benzene nucleus. Such compound gives possibility of six isomers in respect to the grouping of the two chlorine substituents on the ring. Applicant states that these compounds possess the property of being easily polymerized to produce several plastic resins of desired physical and chemical properties."

We take the following from the brief on behalf of appellant:

"There are six nuclear-substituted *di*-chlorstyrenes. Each has the formula $C_6Cl_2H_3CH : CH_2$. They differ only as to the positions of their two chlorine atoms in the benzene nucleus and are therefore known as *position isomers*. (Italics quoted.)

"Each of the position isomers of nuclear-substituted dichlorstyrene behaves chemically in the same manner. They differ very slightly as to density and index of refraction, but the differences between the individual position isomers are so slight that they are not material to any issue involved in this case * * *."

Appellant's application sets forth examples of the six isomers and a method of producing them. The second of these is entitled "2,4 Dichlorstyrene" and the product is stated as having "a density of $D_4{}^{25} = 1.246$ and an index of refraction of $N_d{}^{25} = 1.5802$." It will be noted that both the density and the index of refraction are within the limits defined in the appealed claim. The example embraces a description of a method by which the product may be made, but no method claim is involved. Appellant's brief states that the product "can be produced by a variety of different processes."

The Dreisbach patent 2,110,829 recites, inter alia, that the "usual major product

from the pyrolysis * * * of 2.4—dichloro-ethylbenzene is 2.4—dichloro-styrene," which latter, it will be observed, is the product embraced in the appealed claim.

The Dreisbach and Day patent 2,295,077 describes the production of numerous products including "ortho-para-dichloro-styrene," which, the board stated (and appellant apparently agrees), "is the same as applicant's 2.4—dichloro-styrene above noted."

In view of the fact that the Dreisbach patent, No. 2,110,829, is the clearer of the two references we think the discussion in the main may be confined to it, but it is not meant to hold that the Dreisbach and Day patent is not a proper reference.

Appellant concedes that each of the patents "mentions by name one particular position isomer," and, as stated in the quotation from his brief, supra, concedes that the differences between the individual position isomers are so slight that they are "not material to any issue involved in this case."

It follows, of course, that unless there be found a patentable distinction between the disclosures of the reference patents, as hereinabove described, and the appealed claim appellant may not prevail.

All the claims of both reference patents appear to be method claims but that, as we view it, does not affect the issue here.

Appellant alleges error in fifteen reasons of appeal. It is unnecessary that each of these be discussed in detail.

The gravamen of appellant's contention seems to be that the practice of the processes of the respective references fails to produce a dichlorstyrene of sufficient purity to meet the requirements of the claim here on appeal in certain particulars, and, in this connection, he relies upon certain affidavits which were introduced during the prosecution of the application before the examiner, including two by Dr. Gordon D. Byrkit which are especially emphasized. Both the examiner and the board took note of the affidavits and discussed them.

Before proceeding to a discussion of the contention, we think it proper, in view of appellant's allegation that the tribunals of the Patent Office incorrectly stated it, to quote the following from that part of his brief relating to reference patent 2,110,829: "Appellant has never contended and does not here contend that the test duplicating the process of Dreisbach patent 2,110,829 for producing dichloro styrene, as carried out by Dr. Byrkit, *did not produce* a substantial yield of dichloro styrene. Instead, appellant has consistently contended and still contends merely that the process of this Dreisbach patent (as is shown by this test) does not produce a dichlorostyrene *sufficiently pure to meet the requirements of the claim here on appeal,* whereby it will possess the property of readily polymerizing to produce the new, unusual and valuable thermoplastic resin which forms when *appellant's product as claimed* is permitted to polymerize." (Italics quoted.)

The foregoing is repeated in substance in his discussion of reference patent No. 2,-295,077.

We may say that the examiner apparently regarded the Byrkit affidavits as having been introduced "to establish that these [the reference] patents are inoperative to produce the dichloro styrenes by either the dihydrohalogenation procedure of 2,295,077 or the pyrolysis procedure of 2,110,829."

We find nothing in the decision of the board referring to the matter of inoperativeness, but it was stated:

"Affidavits of record purport to have carried out the processes described in the patents for preparing species other than that of applicant's claim with the assertion that no nuclear-substituted-dichloro-styrene was produced.

"It would seem to be probable that in carrying out the methods set forth in the patents said to produce some other particular species such as mono-nuclear-substituted chloro styrene no di-substituted species would be produced.

"After careful consideration of the record we are not convinced that this style of proof is sufficient to overcome the definite naming of the di-chloro form as a valid compound directly anticipating the terms of the appealed claim. It is considered that a skilled chemist, working within the scope of the above two Dreisbach patents and exercising the skill of those working in the art, could produce the di-chloro form and that

therefore the suggestion of this form in the patent is a direct and valid anticipation and reference against the appealed claim. We accordingly hold the showing of the affidavits to be insufficient to remove the citations as effective references."

In view of appellant's express concession that the process of the respective patents as carried out by Dr. Byrkit did produce a substantial yield of dichloro-styrene we would not be justified in holding that they are not valid and controlling references.

The claim is for a product which is specifically disclosed in patent 2,110,829 with a description of how it is made. It is true that the patent does not state the density or the index of refraction of the product but it is not seen wherein this is important, particularly in view of appellant's concession that the particular compound of the claim (as well as the other compounds described in the application but not claimed) "can be produced by a variety of different processes."

That one skilled in the art can produce dichlorostyrene by following the processes defined in the patents is evidenced by the fact that Dr. Byrkit did it. It is true that he states that he did not secure a pure product, but so far as the matter of purity is concerned it is noted that the claim does not call for any particular degree of purity, and we fail to find any teaching that the particular densities and indexes of refraction shown have any special utility.

Appellant contends that the factual situation here is comparable with that present in the case of Kuehmsted v. Farbenfabriken of Elberfeld Co., 7 Cir., 179 F. 701.

That was an infringement proceeding in which the United States Circuit Court of Appeals, Seventh Circuit (affirming the decision of the United States Circuit Court for the Northern District of Illinois, 171 F. 887), held valid and infringed a patent which had been issued by the Commissioner of Patents covering a product sold under the trade name of "aspirin."

The respective courts had not there the responsibility of passing upon the question of whether a patent should be issued, a matter upon which we must pass here. They merely passed upon the question of wheth- er a patent which had been issued should be held valid, and, therefore, infringed.

In holding that it was valid and infringed, the respective courts necessarily (although neither of them said so) approved the action of the commissioner in issuing the patent.

As expressed in a headnote of the decision of the Circuit Court of Appeals, it was held that the contested patent was "for the product of a *new process,* which for the first time produced it in a sufficiently pure state to render it therapeutically available." (Italics supplied.)

It would seem from the foregoing that the process there applied was found to be new and that the tribunals passing upon the question of patentability were influenced thereby. In the instant case the appellant's process does not produce a product differing in kind from that disclosed by the prior art, and in that respect it differs from the Kuehmsted v. Farbenfabriken of Elberfeld Co. case, supra. See In re Merz, 25 C.C. P.A.(Patents) 1314, 1317, 97 F.2d 599; In re Crosley et al., 34 C.C.P.A.(Patents) —, 159 F.2d 735.

The decision of the board is affirmed.

Affirmed.