36 C.C.P.A. (Patents)

**Application of FINLEY.**

Patent Appeal No. 5570.

United States Court of Customs and Patent Appeals.
April 12, 1949.

See also 174 F.2d 135.

Pennie, Edmonds, Morton & Barrows, of New York City (Louis D. Forward, of New York City, Clarence M. Fisher, of

Washington, D. C., and Bryce Beecher, of Boston, Mass., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (J. Schimmel, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL and JOHNSON, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of the single claim of appellant's application for patent, reading: "1. As a composition of matter, 2 ethyl hexyl salicylate."

This and another appeal by Finley (Patent Appeal No. 5571 involving application, serial No. 409,842) are companion cases. They were consolidated for hearing before us, argued together, and are being decided concurrently. See In re Finley, 174 F.2d 135, 36 C.C.P.A., Patents, ——.

In the statement of the examiner, following the appeal to the board, it is said: "The alleged invention relates to the ester of 2 ethyl hexyl alcohol, an iso-octyl alcohol, which is in effect normal hexyl alcohol substituted in the 2 position by an ethyl radical ($CH_2CH_2CH_2CH_2CH.(C_2H_5)CH_2$-OH), and salicylic acid, an hydroxy (OH) benzoic acid, which is represented by a benzene ring substituted by adjacent hydroxyl (OH) and carboxyl (COOH) groups."

The rejection was based upon the following patents and publications, it being held that the claim is unpatentable over such references:

Kyrides, 1,979,559, Nov. 6, 1934; Thomas, 2,062,950, Dec. 1, 1936; Bass et al., 2,154,598, Apr. 18, 1939; Frey, 2,320,228, May 25, 1943; Rule "Chem. Abstracts" Vol. 24 (1930) pp. 604-5; Karrer, "Organic Chemistry" (1938) Eng. Trans., pg. 74-76; Roger, "Chem. Abstracts" Vol. 32 (1938) pg. 1241.

With respect to the facts of the case, we quote the following from the brief for appellant:

"While there are minor differences between the views of the Examiner and appellant as to what the references disclose, none of such differences is of sufficient importance to have any real bearing on the issue here presented for determination. Therefore, for the purpose of the present appeal, it may be assumed that appellant, the Examiner, and the Board of Appeals are in substantial agreement as to what the references disclose. This was acknowledged in appellant's brief before the Board of Appeals * * * and also by the Board of Appeals in whose decision it was stated:

"The single claim at issue defines a compound, 2 ethyl hexyl salicylate, which appellant also designates as an 'iso-octyl salicylate' in his specification. This compound which has not been found in the literature and is apparently new, is prepared by a method that is not contended to be any departure from the general manner of preparing alkyl salicylic acid esters * * *. The ester when converted to its calcium salt is said to be a desirable additant to lubricating oils and compositions and to have as such, calcium salt three times the thermal stability possessed by its isomer, the normal octyl ester salt, in lubricating oils.

"No question is raised as to the disclosure by the references of the use of metal salts of homologues and an isomer of the claimed compound as lubricant additants. The patent to Frey discloses a considerable number including the salt of octyl salicylate of the alkyl salicylates" * * *.

In view of the agreement, no detailed analysis of the references need be made. That the prior art discloses various homologues and at least one isomer of the claimed compound, all used as lubricant additants, is a part of appellant's concession, the isomer being n-octyl salicylate disclosed in the patent to Frey, which discloses also a large number of homologues.

While we do not find an express holding by either the examiner or the board that the *ester*, 2-ethyl hexyl salicylate, per se, has utility or value, the examiner, in effect, held that it is shown by affidavit that the *calcium salt* derived from the ester

when blended with oil is superior to a similar blend of oil with the calcium salt of the prior art products.

The board said: " * * * The ester when converted to its calcium salt is said to be a desirable additant to lubricating oils and compositions and to have as such, calcium salt three times the thermal stability possessed by its isomer, the normal octyl ester salt, in lubricating oils."

It seems obvious to us that the ester itself must be held to have utility as the basis of a valuable article if nothing more, and one of the questions in the case is whether that particular type of utility is a factor to be given weight on the matter of patentability. As we understand their decisions, both the examiner and the board were of opinion that the ester per se is too remote from the calcium salt, referred to in the affidavit as having been tested, to justify attributing utility to it in a patentable sense.

The affidavit referred to is that of Robert C. Palmer, a chemist employed by the assignee of the application here involved, who stated that during the month of May 1941 (the application appears to have been filed in the Patent Office September 6, 1941) he "was asked to determine the thermal stability of the calcium salt of 2-ethyl hexyl salicylate relative to the calcium salt of n-octyl salicylate," the latter being the isomer of the prior art.

The pertinent part of his affidavit reads:

"4. That he subjected 1 per cent blends of the calcium salts of 2-ethyl hexyl salicylate and n-octyl salicylate in lubricating oil to a thermal stability test in which the blends were heated in glass tubes under a nitrogen atmosphere. That the tubes were observed periodically for visible precipitate and that visible precipitate occurred first at the following test hours:

|  | "at 341° F | at 400° F. |
|---|---|---|
| "Ca-n-octyl salicylate | 8 | 1 |
| "Ca 2-ethyl hexyl salicylate | 24 | 2 |

"5. Affiant further says that the visible precipitate resulted from decomposition of the calcium octyl salicylates and precipitation of calcium salicylate, and that it is a good measure of the stability of the esters to heat."

There was a rejection of the claim by the examiner on April 17, 1944, when the patent to Frey was cited, apparently for the first time. Nothing was there said in the decision as to the isomer feature, but it was said, "No invention is ordinarily seen in homologs of old compounds in the absence of any unpredictable properties." The examiner cited the decisions of this court in the three Ex parte Hass et al., cases (Patent Appeals Nos. 4819, 4820, and 4821) which are reported respectively in 141 F.2d 122, 127, and 130, 31 C.C.P.A., Patents, 895, 903, and 908.

The affidavit of Palmer seems to have been filed November 15, 1944, and the examiner, on March 16, 1945, responded in a brief decision, again rejecting the claim and declaring the rejection to be final.

The appeal to the board followed and the examiner in his statement, after analyzing the references, reiterating the alleged remoteness of the calcium salt from the claimed ester, and stating that the range of esters disclosed in the references is complete enough to enable one skilled in the art to predict the approximate properties of any specifically undisclosed ester, gave the following summary:

"Claim 1 has been rejected as unpatentable over the cited art. Applicant has presented no evidence that 2 ethyl hexyl salicylate per se is superior to the prior art products or has properties which anyone skilled in the art could not predict from a knowledge of the series of homologous and isomeric esters disclosed in the art."

After the brief on behalf of appellant had been filed before the board in support of his appeal, the examiner made a reply to it in which it was said, inter alia: " * * * A property of a compound may be expressed as a description of the effect produced when the compound is reacted with another substance. Thus the formation of a salt when the salicylate is reacted with an appropriate compound may be described as the property of 'salt-forming' and the salt may be subsequently tested or its oil compositions, as by heating to determine the property which applicant has entitled 'thermal stability'. But to assert that the property of the salt or of the oil

is the property of the ester is clearly a confusion of the issue."

The board said, inter alia:

* * * It is at least well settled that chemistry as a science is not so unpredictable as to mark every new compound as inventive and patentable.

\* \* \* \* \* \*

"We find that the recognition of the comparative inherent thermal stability of a derivative of the compound claimed, even if it be presumed to be inherent in the compound as characteristic of its structural arrangement, is not sufficient to controvert the conclusion we reach from the Frey patent and other cited art that its concept as a member of the homologous series of alkyl salicylates, and the certainty of its production by known methods used for other members of the series, would be obvious to the usual knowledge of the chemist. We agree with the Examiner that the aspect of the advantages in the use of its derivative is too remote a circumstance to mark this case as an exception to the In re Hass decision[s]."

In the course of its decision the board said that appellant "urges that such decisions as In re Hass * * * does [sic] not apply."

This is assigned as error in the reasons of appeal, and appellant insists before us that such decisions do apply. His brief refers specifically to the Hass et al. case involved in Patent Appeal No. 4819, supra. However, the same rule applied in that case to such issues as are regarded similar in principle to the issues here involved was applied also in the other two Hass et al. cases, supra. In the second of those cases (Patent Appeal No. 4820) this court, speaking through Judge Hatfield, after a recitation of the facts and referring to our decision in the Hass et al. case (Patent Appeal No. 4819), supra [141 F.2d 129], said:

"* * * For the reasons stated in our decision in that case, we are of opinion that the tribunals of the Patent Office were right in holding that, in order to be patentable, novel members of a homologous series of compounds must possess some unobvious or unexpected beneficial properties not possessed by homologous compounds disclosed in the prior art.

"Whether novel chemical compounds are patentable over prior art isomers and homologues, is a question to be determined in each case."

It may be said that in all three of the Hass et al. cases, supra, it was found, in effect, that the prior art disclosed subject matter homologous with the subject matter of the claims and, in some instances, disclosed subject matter isomeric with that of certain of the claims. Under the facts of those cases no distinction was there drawn by us between the homologues and the isomers upon the question of patentability, both types of compositions being produced in substantially the same manner.

As a matter of possible interest we here insert the definitions of the terms given in the Hackh Chemical Dictionary:

"homolog. Any one member of a series of compounds which have a structure differing regularly by some radical, as$=CH_2$.

"isomer. Any compound having the same composition, but different properties, as another compound."

We said in our decision in the case involving Patent Appeal No. 4819, supra [141 F.2d 125]: "It is well understood by chemists that the members of a homologous series of chemical compounds possess the same principal characteristics; that generally the chemical and physical properties of the individual members vary gradually from member to member; and that knowledge of the properties and chemical behavior of one of the members of the series suggests to the chemist the properties and chemical behavior of the other members of the series. See Holleman & Walker, Textbook of Organic Chemistry, 5th Ed., 1920, pp. 41,42, and Paul Karrer, Organic Chemistry, 1938, p. 23."

On behalf of appellant it is sought to distinguish the instant case from the Hass et al. cases, supra. It is contended, in substance, that appellant's product is new and useful, and that it is shown by the

affidavit of Palmer to possess unobvious or unexpected beneficial properties not possessed by either the homologous compounds or the isomer disclosed in the prior art.

Obviously appellant construes our holding in those cases to mean that if a new and useful product does show unobvious or unexpected beneficial properties it follows that such a product is patentable. We did not affirmatively, or even by implication, so state in our decisions there. Our statement meant merely that unless a product does show the defined characteristics it is not patentable. Even if they be shown, the consideration of other factors may be required. As we said in our decision in the second Hass et al. case, supra, "Whether novel chemical compounds are patentable over prior art isomers and homologues, is a question to be determined in each case."

In the case of In re Wietzel et al., 39 F.2d 669, 671, 17 C.C.P.A., Patents, 1079, we had before us certain claims, relating to the process of manufacturing formamid and hydrocyanic acid, which had been rejected by the tribunals of the Patent Office on prior art. In its decision the Board of Appeals cited certain prior art as being sufficient "to raise a presumption at least" that the reactions disclosed would apply to processes defined in the claims at issue, and said, "where there is no real reason to suppose that the result would not be produced there is no invention in trying it and finding out that the process is successful." This we quoted with approval.

The soundness of this holding was questioned in the second Hass et al., case, supra, and we declared adherence to it, citing the case of In re Von Bramer et al., 127 F.2d 149, 29 C.C.P.A., Patents 1018, 1023.

The brief of the Solicitor for the Patent Office contends that the rule so stated in the Wietzel et al., case, supra, is applicable to the instant case, it being conceded in the brief on behalf of appellant that his compound is best prepared by using the conventional method used in preparing the homologues and isomers of the prior art. The brief also asserts, citing cases: "It is the settled doctrine * * * that where the subject matter defined in the claims at issue involves only that which would naturally occur in the development of the art, the skill of the art being sufficient to its production, then the inventive faculty or inventive ingenuity has not been exercised, even though the results obtained are better than the expected."

The cases cited are: In re Gauerke, 86 F.2d 330, 24 C.C.P.A., Patents, 725; In re Kepler, 132 F.2d 130, 30 C.C.P.A., Patents, 726; In re Carothers et al., 135 F.2d 343, 30 C.C.P.A., Patents, 995; In re Leum et al., 158 F.2d 311, 34 C.C.P.A., Patents, 762; In re Lieser, 162 F.2d 224, 34 C.C.P. A., Patents, 1113.

The brief further states: " * * * it is believed that appellant's contention with respect to the rule of the Hass cases is in conflict with the decisions of this Court, in In re Merz [sic], 97 F.2d 599, 25 C.C.P.A., Patents, 1314; In re Crosley et al., 159 F.2d 735, 34 C.C.P.A., Patents, 882; In re Michalek, 161 F.2d 253, 34 C.C.P.A., Patents, 976. In the latter case in particular the claimed compound was rejected upon the disclosure of an isomer in the prior art, and an available process for producing the isomer."

That there is some analogy between the case of In re Michalek, supra, and the instant case is obvious from an examination of our decision there. The single claim involved was for a chemical product which was found to be isomeric with a product disclosed as being produced by a process of the prior art, and there as here the appellant relied upon affidavit evidence introduced during the prosecution of the application.

In that case, one affidavit by a chemist was to the effect that in a test of a prior art process a substantial yield of dichloro styrene (a described form of which was the product claimed by the appellant there) was produced, but it was also shown by test that the product of the prior art was less pure than the product involved in the claim. In the instant case, the situation differs in that the test was made of calcium salts derived from the product claim-

ed and calcium salts derived from that product's isomer disclosed by the prior art, the test being made to determine the matter of thermal stability, and not that of purity as in the Michalek case, supra.

There is no explanation in the record as to why the salts of the respective esters were tested instead of the esters themselves. Whether it would have been possible to test the esters except by testing the substances derived from them does not appear from the record. The affiant, Dr. Palmer, who, so far as the record shows, was asked to test only the respective calcium salts, does state, as we understand his affidavit, that the result obtained was "a good measure of the stability of the *esters* to heat." (Italics supplied)

■ We do not question the veracity of affiant, but in view of the meagerness of the record, as above indicated, we are not prepared to attribute error to the holding of remoteness made by the board. Even if we should disagree with the board upon that question, we do not feel, viewing the record in the light of the authorities cited, that the grant of the patent sought would be proper.

The decision of the Board of Appeals is, therefore, affirmed.

Affirmed.