**STERLING DRUG, INC., Plaintiff,**

**v.**

**Edward J. BRENNER, Commissioner of Patents, Defendant.**

**Civ. A. No. 373–65.**

United States District Court
District of Columbia.

Aug. 3, 1966.

———◆———

Dean Laurence, Herbert I. Sherman, Laurence & Laurence, Washington, D. C., for plaintiff.

Joseph Schimmel, Sol., Raymond E. Martin, Washington, D. C., of counsel, for defendant.

## FINDINGS OF FACT

JACKSON, District Judge.

1. Plaintiff, as assignee of Carlo Concilio, Piero Lanza and Mario Preti, brought this action under 35 U.S.C. § 145, seeking a judgment from this Court authorizing the defendant, Commissioner of Patents, to issue a patent to plaintiff containing Claims 2, 3, 4 and 7 of Concilio et al. application Serial No. 101,656, filed April 10, 1961, entitled "Threo-3-(p-methylsulfonylphenyl) - 2 - dichloro-acetamido-1-(aminoacetoxy)- 3 -propanol and Preparation Thereof."

2. The application in suit relates to an ester (identified in the title of the application) and certain derivatives thereof, which are therapeutically useful as antibiotics. This ester is also known as thiophenicol glycinate. The latter is much less bitter than thiophenicol, its alcohol progenitor.

3. Claim 2 is representative and reads as follows:

D- (-) -*threo*- 3 -(p-methylsulfonyl-phenyl) - 2 - dichloroacetamido - 1 - (aminoacetoxy)- 3 -propanol.

The other claims stand or fall with Claim 2.

4. The Patent Office Board of Appeals affirmed the Examiner's rejection of the claims of the Concilio et al. application, on the ground of unpatentability over the combined teachings of Belgian (Zambon) patent No. 572,685, granted November 29, 1958, and Rebstock et al. U. S. patent No. 2,717,268, issued September 6, 1955, particularly in view of the prior art knowledge admitted in the Concilio et al. specification that thiophenicol itself is a broad spectrum antibiotic.

5. Zambon discloses as prior art (with respect to the invention disclosed therein) that the antibiotic chloramphenicol is characterized by its bitter taste and slight water solubility, and that some of its esters (such as those produced with palmitic, benzoic and cinnamic acids) are insoluble and tasteless. This patent further discloses that a new water-soluble ester, chloramphenicol glycinate, is useful as a parenterally administered antibiotic in cases where an effective water-soluble chloramphenicol derivative is needed, such as for injection therapy.

6. The Board of Appeals, in interpreting Zambon, recognized that only those esters of chloramphenicol which are insoluble in water are tasteless. The Board did not hold that the bitter taste of chloramphenicol would be avoided by making the water-soluble glycinate ester

thereof. The Board committed no clear error in its interpretation of Zambon.

7. Rebstock et al. U. S. patent No. 2,717,268 discloses a process for the preparation of substituted 1-phenyl-2-dichloroacetamidopropane-1, 3-diol compounds where the R substituent (at the p-phenyl position) is a hydrogen, nitro, phenyl, $CH_3S$, $CH_3SO$ or $CH_3SO_2$ substituent. The products of the Rebstock process are disclosed as useful as therapeutic agents per se. When R is nitro and $CH_3SO_2$, the diols, respectively, are chloramphenicol and thiophenicol.

8. Chloramphenicol and thiophenicol are alcohols and are therapeutically useful as antibiotics, but both have poor water solubility. Chloramphenicol glycinate and thiophenicol glycinate, the respective glycine esters of those alcohols, are also useful as antibiotics, and have good water solubility. Rebstock discloses the two free alcohols and their therapeutic utility. Zambon discloses chloramphenicol glycinate. Thiophenicol glycinate, the compound of Claim 2, is novel and useful. The structural formulas for thiophenicol glycinate and chloramphenicol glycinate are identical, except that the p-phenyl substituent of the former is a methylsulfonyl ($CH_3SO_2$) group, while the latter has a nitro ($NO_2$) group at the same point. The same structural difference, of course, exists in the free diols.

9. It would have been obvious to one having ordinary skill in the drug art that the poor water solubility of thiophenicol could be overcome by forming the glycine ester of thiophenicol, in view of the superior water solubility of chloramphenicol glycinate to that of chloramphenicol itself (taught by Zambon) and the therapeutic equivalence of chloramphenicol and thiophenicol (taught by Rebstock).

10. Plaintiff's expert witness, Dr. Ferrari, Director of Medical Research for Zambon S.p.A., testified at the trial that thiophenicol itself "is slightly less bitter than chloramphenicol and possibly not as long lasting * * *." Conse-

quently, it would be reasonable to predict, on the basis of this knowledge, that thiophenicol glycinate should be at least "slightly less bitter" than chloramphenicol glycinate, and that the bitter taste, if any, should not persist as long with the glycine ester of thiophenicol as with that of chloramphenicol.

11. The evidence showed that a sulfate salt solution of chloramphenicol glycinate in lyophilized form is very bitter and that a hydrochloride salt solution of thiophenicol glycinate is not bitter (but only salty and sour), the latter property constituting an unexpected advantage in inhalation therapy or oral administration of the latter drug.

12. Chloramphenicol glycinate and thiophenicol glycinate, as one would expect, have the following properties in common: (1) effective antibiotic utility, (2) good water solubility, (3) capability for parenteral administration by injection intramuscularly, intravenously, or into body cavities such as the peritoneal, pleural and synovial. No evidence was adduced showing unexpected superiority of thiophenicol glycinate to chloramphenicol glycinate with respect to any of these three expected beneficial properties which the two drugs possess in common.

13. The evidence shows that the compound of Claim 2 has enjoyed commercial success only in Italy. Such evidence did not convincingly show that all or even a substantial portion of the compound sold in Italy was purchased for use in inhalation therapy, as distinguished from injection therapy.

14. There are too many similarities and too few differences between thiophenicol glycinate and chloramphenicol glycinate to support a finding of unobviousness of the former compound, when considered "as a whole" in view of both structural formulas and the established expected and unexpected advantageous properties of record.

15. The compound of Claim 2, considered "as a whole", would have been obvious at the time Concilio et al. made their invention, to a person having ordi-

nary skill in the drug art and having knowledge of the teachings of Zambon and Rebstock.

16. The evidence offered by plaintiff at the trial does not carry thorough conviction that the Board of Appeals was clearly in error in holding Claims 2, 3, 4 and 7 unpatentable over the combined teachings of Zambon and Rebstock, or that such decision lacked a rational underlying basis.

17. The compounds of Claims 2, 3, 4 and 7 are obvious in view of the prior art.

## CONCLUSIONS OF LAW

1. Where the differences between the subject matter of the claims in suit and the prior art are such that the subject matter as a whole would have been obvious to a person having ordinary skill in the pertinent art at the time the invention was made, the claims are unpatentable under 35 U.S.C. § 103, and evidence of an unexpected beneficial result, although material, is not necessarily a controlling factor.

2. Where structurally closely related novel and prior art chemical compounds are shown to possess a number of expected beneficial properties in common in the same field of use, evidence of a single unexpected advantageous property of the novel compound in that same field is not necessarily sufficient to render the latter compound "as a whole" patentable, if the prior art clearly suggests making it for the purpose of utilizing the expected beneficial properties in that field of use. In re de Montmollin and Riat, 344 F.2d 976, 52 C.C.P.A. 1287 (1965). See also In re Papesch, 315 F.2d 381, 392, 50 C.C.P.A. 1084, 1093 (1963), citing In re Finley, 174 F.2d 130, 134, 36 C.C.P.A. 998, 1001 (1949).

3. Commercial success cannot make an otherwise clearly obvious invention patentable. In re Cline, 345 F.2d 847, 52 C.C.P.A. 1404 (1965).

4. Evidence of commercial success of a pharmaceutical compound in a foreign country is entitled to consideration as a material, but not controlling, factor bearing on the obviousness of a claimed invention.

5. Where a novel compound is capable of several uses, all but one of which are expected, evidence of commercial success is entitled to little weight unless it is clearly established that such success is due primarily to the unexpected utility of the compound.

6. Claims 2, 3, 4 and 7 of the application in suit are unpatentable over the cited prior art under 35 U.S.C. § 103.

7. Plaintiff is not entitled to a patent containing any of Claims 2, 3, 4 and 7 of Concilio et al. application Serial No. 101,656.

8. The Complaint should be dismissed as to all of the claims.