**UNION CARBIDE CORPORATION,
Plaintiff,**

v.

**Edward J. BRENNER, Commissioner of Patents, Defendant.**

**Civ. A. No. 1258-64.**

United States District Court
District of Columbia.

April 12, 1965.

James C. Arvantes, Paul A. Rose, Washington, D. C., for plaintiff.

Clarence W. Moore, Sol., Washington, D. C., for defendant.

JACKSON, District Judge.

This is an action brought under Section 145 of Title 35 United States Code in which plaintiff, as assignee of an application for patent by Frederick C. Frostick, Jr. and Benjamin Phillips, Serial No. 217,229, filed July 12, 1962, entitled "1,2,5,6–Diepoxycyclooctane and Process For The Preparation Thereof", seeks by his complaint a judgment from the Court

authorizing the defendant, the Commissioner of Patents, to grant plaintiff a patent containing claim 1 in that application.

The invention relates to a chemical compound, 1,2,5,6–diepoxycyclooctane, which is prepared by reacting 1,5–cyclooctadiene with at least two moles of peracetic acid. The compound is used in the preparation of resinous products by reacting it with difunctional organic chemical compounds such as diamines, dialdehydes, dicarboxylic acids, diols, and the like. Specifically, it reacts with adipic acid to form flexible thermoplastic resins. It is also useful as a stabilizer for vinyl chloride resins.

The single claim at suit reads as follows:

The diepoxide, 1,2,5,6–diepoxycyclooctane of the formula:

The claim was rejected by the Patent Office on the ground that the differences between the subject matter it contained and the prior art would have been obvious at the time the invention was made to persons ordinarily skilled in the art to which the subject matter pertained. 35 U.S.C. § 103.

The prior art relied upon by the Patent Office may be grouped as follows:

I). British patent No. 520,163 (1940)

II). Richter (1), "The Chemistry Of Carbon Compounds (Alicyclic)", Vol. 2, page 1 (3rd ed. 1939)

Richter, "The Chemistry of Carbon Compounds" (1947)

Fieser and Fieser, "Organic Chemistry", pp. 4, 46 and 47 (1956)

III). Carlson, U.S. Patent No. 2,739,-161 (1956)

Frostick et al., U.S. Patent No. 2,786,067 (1957)

Phillips et al., U.S. Patent No. 2,745,847 (1956)

Phillips et al., U.S. Patent No. 2,750,395 (1956)

IV). Foster et al., Journal of the American Chemical Society Vol. 70, No. 7, pp. 2303–5 (1948)

Craig, U.S. Patent No. 2,571,208 (1957)

The British patent discloses the compound 1,2,4,5–diepoxycyclohexane, which is a homologue of the claimed compound and is structurally similar to it. It is useful as an insecticide.

The references of Group II indicate that cyclohexane and cyclooctene and other corresponding derivatives constitute a homologous series of compounds.

The Group III references show that diepoxides are known to be useful for stabilizing resins.

The Group IV references disclose the preparation of 1,2–epoxycyclooctane by reacting cyclooctene with peracetic acid in aqueous acetic acid. The monoepoxycyclooctane is disclosed as a useful intermediate for the preparation of derivatives of cyclooctane, by reason of the reactivity of the epoxy radical toward other compounds.

The principle basis for the Patent Office refusal to grant a patent was the theory that the compound of the British patent and the compound of claim 1 are so similar structurally that it would have been obvious to make the claimed compound if one knew of the existence of the compound of the British patent. According to the Patent Office, a compound is not patentable in view of a structurally similar compound in the absence of evidence showing that the new compound has unexpected properties.

The plaintiff contends that the claimed compound does have unexpected properties. When reacted with adipic acid, the claimed compound apparently produces a resin which is "thermoplastic"—which means that the resin when heated can be molded into various shapes. When the compound of the British patent is reached with adipic acid, however, it forms a resin which is "thermoset"—which means that the resin when heated *cannot* be molded and formed into various shapes.

The defendant did not seriously controvert the fact that a thermoplastic—rather than a thermoset—resin would be produced by reacting the known compound with adipic acid. Instead, the defendant argued that the two compounds, while differing with respect to the adipic acid reaction, were similar insofar as they both could be used for resin stabilizers. Additionally, the Patent Office pointed out that the claimed compound was probably useful also as an insecticide.

In a somewhat alternative view of the matter, the Patent Office cited the Group IV references as a basis for finding the *process for making* the claimed compound to be obvious. The defendant reasoned that one of the compounds disclosed by Foster et al. (1,5–cyclooctadiene) could be epoxidized according to the method of Craig to form the claimed compound. The motive for so doing, said the defendant, would have been supplied by the insecticide properties of the British patent.

The plaintiff, in response to the latter ground of rejection, noted that Foster only "presumed" that the compound the defendant relied upon was actually present in Foster's disclosure, and therefore, that it hardly would have been obvious to take such a "presumed" compound and then react it, following the process of another patent, to produce a product disclosed by a still additional patent.

In response to the defendant's view of the similarity of the compounds for use as resin stabilizers, the plaintiff asserted that so long as one of the properties of the claimed compound is different from the properties of the known compound, this is sufficient to rebut any presumption that the claimed compound would have been obvious in view of the known compound, even though *other* properties of the two compounds might cause them to be used for the same purposes.

The Court is persuaded that the Patent Office position is inconsistent with the evidence. Unquestionably, the claimed compound is new. The only important reference used against it is the compound of the British patent, which admittedly cannot be reacted with adipic acid (or, as also shown by the evidence, with other compounds) to form thermoplastic resins. Also, it seems settled, that one would not expect to have produced a thermoplastic resin with any of the other compounds similar to the compound of the British patent that were known prior to the plaintiff's invention. Hence, the Court feels that even though plaintiff's compound is highly similar to that of the British patent, its unexpected reactivity in forming thermoplastic resins negates what otherwise would be a presumption of obviousness. A person desiring to form a compound with such a reactivity could not have been taught how to do it by the prior art cited by the Patent Office.

With respect to the rejection based upon the Group IV references, the Court finds itself unable to agree with the Patent Office that a person skilled in the art would use a compound only "presumed" to be present in a first reference, subject it to a reaction in accordance with the teachings of a second reference, and be induced to do so by the use to which a compound in yet a third reference might be put, when such a use was not even the one sought by the inventor.

The Court will find for the plaintiff, against the defendant, and will authorize the Commissioner of Patents to grant Letters Patent of the United States containing claim 1 of plaintiff's application.

The above Opinion contains Findings of Fact and Conclusions of Law.