Application of William A. HIGGINS and William M. LeSuer.

Patent Appeal No. 7648.

United States Court of Customs and Patent Appeals.

Dec. 8, 1966.

Rehearing Denied Feb. 9, 1967.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

Joseph F. Shekleton, Cleveland, Ohio (Almon S. Nelson, Washington, D. C., of counsel), for appellants.

Joseph Schimmel, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for the Commissioner of Patents.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1–8 of application serial No. 74,236, filed December 7, 1960, for "Phosphorodithioate Inhibitors."

The ground of rejection is double patenting in view of appellants' own patent No. 3,000,822 issued September 19, 1961, on an application, serial No. 635,102, filed January 22, 1957, for "Phosphorodithioate Inhibitors," taken with prior art references as follows:

| | | |
|---|---|---|
| Freuler | 2,364,283 | Dec. 5, 1944 |
| Mulvany | 2,689,220 | Sept. 14, 1954 |
| Asseff et al. | 2,723,236 | Nov. 8, 1955 |
| Goldsmith | 2,838,555 | June 10, 1958 |

Claim 1 is illustrative of the claims on appeal and reads:

1. A lubricating composition comprising a major proportion of a lubricating oil and a minor proportion, sufficient to improve the thermal stability thereof, of the zinc salts of a mixture of phosphorodithioic acids having the structure in which $R_1$ and

$R_2$ are primary aliphatic hydrocarbon radicals selected from the class consisting of lower molecular weight radicals having less than five carbon atoms and higher molecular weight radicals having at least five carbon atoms, the mole ratio of lower molecular weight radicals to higher molecular weight radicals in the zinc salt mixture being within the range of 1:1 to 3:1.

It is unnecessary to differentiate the claims. They are all drawn to lubricating compositions having a major proportion of lubricating oil and a minor proportion of the mixture of zinc salts of phosphorodithioic acids, which additive acts as an oxidation and corrosion inhibitor at high temperatures.

Appellants' patent claims the same zinc salt mixtures per se and describes them as useful in the very lubricating oil compositions which are being claimed in this application. In fact, the instant application duplicates the specification of the patent wherein the zinc salts and their uses and advantages as lubricant additives are described, adding to the opening paragraph the sentence, "The invention relates more particularly to a lubricating composition containing such

zinc salts." [1] and adding at the end seven examples of lubricant compositions.

The prior art references were cited by the examiner to show that it was old to use zinc phosphorodithioates as lubricant additives but it is not necessary to discuss them in view of appellants' admission that they have been so known and used since 1940.

The examiner explained the rejection as follows:

> This is a rejection on double patenting. Higgins et al. claims the instant zinc salt mixtures while the secondary references teach that zinc salts of dialkyl dithiophosphoric acids are effective anti-oxidation and anti-corrosion additives or [for] lubricating oil compositions. It is the Examiner's contention that the use of the instant salts in a lubrication composition is obvious in view of the secondary references. * * *
>
> * * * * * *
>
> The rejection on double patenting is made because it is the contention of the Examiner that a lubricating oil containing the instant salts is obvious and it is this composition that is being instantly claimed. In other words, the use of such salts as corrosion and oxidation inhibitors in lubricating oils is an *obvious* use of such salts. As appellants have put it, "zinc phosphorodithioates are accepted today as the most generally useful corrosion inhibitor in lubricant compositions." The fact is also shown by the four secondary references. * * *
>
> * * * * * *

Appellants now wish to extend this right of exclusion [from their patent] for another period of years to further monopolize the obvious use of these salts. To prevent such an extension of monopoly is the exact reason that rejections on double patenting are made.

We note the fact that though this application and the application for the patent were copending for a little over nine months, this application was not filed until nearly four years after the application for the patent in which the presently claimed inventions were disclosed. No terminal disclaimer is of record on this appeal.

The board, in affirming the examiner, said, "We see no merit in appellants' arguments and hold that this is a clear case of double patenting." We are of like mind. The prior art of record, as well as appellants' admissions with respect to what the art knew, are persuasive that the use as lubricant additives of the zinc salts claimed in the patent would be entirely obvious. The claimed subject matter is therefore unpatentable in accordance with the principles enunciated in our decisions in In re Simmons, 312 F.2d 821, 50 CCPA 990; In re Sebek, 347 F.2d 632, 52 CCPA 1442; and In re Zickendraht, 319 F.2d 225, 229 et seq., 50 CCPA 1529, 1533 et seq.

Appellants make an argument based on 35 U.S.C. § 103, contending that when their patented zinc salts are used in lubricating compositions advantages are obtained which would not be obvious from the prior art and, as a corollary to that argument, that to use the teaching of their patent to that effect is to use the disclosure thereof, which is not permissible since their patent is not prior art.

We agree with appellants, of course, that we cannot utilize the disclosure of their patent *as prior art.* In applying the test of the obviousness of the *use* of

---

1. The opening sentence in the application at bar, together with its title, appears to be misleading as the claimed subject matter cannot be said to be "Inhibitors" and the claims do not conform to the statement:

> This invention relates to a new composition of matter, and in a more par-

ticular sense its relates to zinc salts of phosphorodithioic acids which contain certain alykl or isoalykl groups tending to enhance the physical and chemical properties of these salts.

The zinc salts are the subject of the patent claims, not of the claims herein.

the previously claimed compounds, we are utilizing the true prior art references, and appellants' admission, not appellants' disclosures.

The starting point for the consideration of obviousness of the use is the compounds claimed in appellants' patent. The Patent Office Solicitor, after pointing out that we have held it proper to consult the patent's disclosure to determine *what* is being claimed, citing In re Copeman, 135 F.2d 349, 30 CCPA 962, and In re Greenlee, 222 F.2d 739, 42 CCPA 926, contends that looking at the bare words and structural formula of the patent claims is not enough in determining what is claimed. His argument runs thus:

> Recent decisions of this Court emphasize the proposition that a patent claim to a chemical compound, referring merely to the compound structure or name, does not constitute a complete definition of the compound. The matter was analyzed in some depth in In re Papesch, 50. CCPA 1084, 315 F.2d 381, and the Court found as follows:
>
>> "From the standpoint of patent law, a compound and all of its properties are inseparable; they are one and the same thing. The graphic formulae, and the chemical nomenclature, the systems of classification and study such as the concepts of homology, isomerism, etc., are mere symbols by which compounds can be identified, classified, and compared. But a formula is not a compound and while it may serve in a claim to *identify* what is being patented, as the metes and bounds of a deed identify a plot of land, the *thing* that is patented is not the formula but the compound identified by it."
>
> The examiner in In re Ward, 51 CCPA 1132, 329 F.2d 1021, contended that compound claims rejected there were not drawn to certain uses which were urged as distinctions over prior art and that if the invention did involve a use, "the invention if properly claimed could belong to a different statu-

tory class of invention." This Court held:

> "The difficulty with that reasoning is that claims to chemical compounds are drawn to more than structural formulae. They define the compounds themselves and compounds possess properties which must be considered along with the formulae."

In line with those decisions, it is not enough, in determining what appellants claimed in their patent, to look merely to the structural formulae in the claims. It is necessary to determine from the specification the properties and characteristics on which patentability was premised. Those characteristics are, of course, those already alluded to, the high degree of thermal stability of the zinc salts * * *, both alone and in lubricating oil compositions. As the Board pointed out * * *, the fact that the new salts gave superior results "made possible the grant of a patent on these salts to appellants."

Taking into consideration the properties of the salts, as it is necessary to do in order to comprehend what the patent claims are directed to, the issue becomes:

> whether it would be obvious to one skilled in the art, having knowledge of the patented zinc salts and the fact that they impart unexpectedly good thermal stability to lubricating oil, that the salts should be used as lubricating oil additives.

That issue, of course, contains its own answer. An essential part of the invention claimed in the appellants' patent is the property of the defined compounds of imparting unexpected thermal stability to lubricating oils. There could be no clearer suggestion that they be put to that use.

We agree with that line of reasoning, which confirms us in the correctness of our holding that the claimed compositions are unpatentable over the claims of the patent, so construed. A different

situation would be presented, of course, if the compounds had not been patented on the basis of the express disclosure of their unexpected advantageous properties in the very compositions in which they are now claimed.

We agree with the examiner's assessment of the situation as one in which patenting of the appealed claims would extend, timewise, the temporary monopoly of the patented salt mixtures insofar as used for the same purposes as were put forward as justifying the issuance of the patent.

The decision of the board is affirmed.

Affirmed.

SMITH, J., concurs in the result.

MARTIN, J., participated in the hearing of this case but died before a decision was reached.